638 So.2d 306 (1994)
Louvanne DIXON
v.
WINN-DIXIE LOUISIANA, INC.
No. 93-CA-1627.
Court of Appeal of Louisiana, Fourth Circuit.
May 17, 1994.
Rehearing Denied July 19, 1994.
*310 Robert W. "Doc" Booksh, Jr. and John B. Fox, New Orleans, for plaintiff-appellee.
Elizabeth S. Cordes and Robert E. Peyton, Christovich & Kearney, New Orleans, for defendant-appellant.
Before LOBRANO, PLOTKIN and LANDRIEU, JJ.
PLOTKIN, Judge.
Defendant Winn-Dixie Louisiana, Inc. appeals a trial court judgment awarding plaintiff Louvanne Dixon $450,000 in damages for injuries he received as a result of a fall down a flight of stairs during a wrongful detention for suspected shoplifting. We amend the judgment to reduce the total award from $500,000 to $302,410.62, and reduce that award by 10 percent for the plaintiff's comparative negligence. In all other respects, we affirm the judgment.

*311 Facts

Although the parties differ on the details of the incidents from which the instant case arose, the following facts are undisputed. On March 2, 1988, while shopping in the Winn-Dixie store at 1841 Almonaster Avenue in the City of New Orleans, Dixon was detained by security guard Michael Castillo for suspected shoplifting of two packages of cigarettes. Dixon had placed the cigarettes in his pocket and had moved into the area between the checkout area and the door at the time of the detention. In response to a request by Castillo, Dixon accompanied him to the back of the store and up a flight of stairs to a platform area where Winn-Dixie employees regularly took breaks. He was detained for more than two hours; toward the end of that time, he was handcuffed in a standing position next to a rail in the "break room." When the police arrived to arrest him, the handcuffs were removed by New Orleans Police Officer Leon Duncan, who was working a security detail at Winn-Dixie and who had previously relieved Castillo. As they prepared to go down the flight of stairs, Dixon fell, ending up at the bottom of the stairs.
Dixon filed suit against Winn-Dixie and Wackenhut Corporation, the security company which employed Castillo, claiming damages both for wrongful detention and for personal injury caused by the fall, which he claims resulted from a hazardous condition on the Winn-Dixie premises. Specifically, Dixon claims that the fall aggravated a pre-existing reflex sympathetic dystrophy (RSD) condition in his right hand. Additionally, he claims that the fall injured both his neck and lower back, causing, among other things, the herniation of a disc in his lower back. Wackenhut Corporation settled with Dixon prior to trial.
The case against Winn-Dixie was tried before a jury, which made the following findings of fact: (1) that Winn-Dixie did not have reasonable cause to detain Dixon, (2) that Dixon sustained an accident or injury on the Winn-Dixie premises due to a hazardous condition, (3) that Winn-Dixie did not act in a reasonably prudent manner to keep the premises free of hazardous conditions, and (4) that the plaintiff's actions did not contribute to his accident or injury. The jury assigned 10 percent contributory negligence to Dixon, with the remaining 90 percent of the negligence for the accident being assigned to Winn-Dixie.
The jury then awarded the following damages: $125,000 for past, present, and future physical pain and suffering; $125,000 for past, present, and future mental anguish and distress; and $250,000 for past, present, and future medical expensesa total of $500,000 in damages. The trial judge entered a final judgment in conformity with the jury verdict, awarding the plaintiff $450,000 ($500,000 minus 10 percent for his contributory negligence).
Winn-Dixie appeals, claiming that the cumulative effect of numerous improper evidentiary rulings, coupled with the trial judge's improper comments and actions before the jury, resulted in reversible error. Winn-Dixie also claims that the following jury fact findings were manifestly erroneous: (1) that Winn-Dixie did not have reasonable cause to detain the plaintiff for shoplifting, (2) that Dixon sustained an accident as a result of a hazardous condition on the premises, and (3) that Winn-Dixie failed to act in a reasonably prudent manner to keep the premises free from such hazardous conditions. Finally, Winn-Dixie claims that the damages are excessive.

1. Alleged trial judge errors

This court has previously found that the cumulation of trial judge errors in evidentiary rulings, coupled with other improper circumstances occurring at trial, may be so prejudicial as to deprive the parties of a fair trial, and thus may constitute reversible error, even if none of the errors considered alone would be sufficient to rise to the level of reversible error. See Clement v. Griffin, 634 So.2d 412 (La.App. 4th Cir.1994). In the instant case, Winn-Dixie claims that the trial judge made numerous prejudicial evidentiary rulings and comments which prevented Winn-Dixie from presenting its defenses to the jury and resulted in an improper jury verdict.
*312 Generally, a trial judge is afforded discretion in conducting a trial, even a jury trial. However, that discretion is circumscribed by considerations of justice and fairness and by La.C.C.P. art. 1791, which prohibits a trial judge from making any kind of comments on the evidence. The trial judge is generally prohibited from engaging in a pattern of judicial conduct which demonstrates prejudice to one party and/or partiality to the other party.
Most of Winn-Dixie's arguments on this issue concern trial court decisions to either admit or exclude evidence, decisions which are governed by the Louisiana Code of Evidence, specifically the following articles:
La.C.E. art. 401. Definition of "relevant evidence"
"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.
La.C.E. art. 402. Relevant evidence generally admissible; irrelevant evidence inadmissible
All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of Louisiana, this Code of Evidence, or other legislation. Evidence which is not relevant is not admissible.
La.C.E. art. 403. Exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time
Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time.
Generally, a trial judge is accorded discretion under the above articles concerning the admission or exclusion of evidence on the grounds of relevance. Polotzola v. Missouri Pacific Railroad Co., 610 So.2d 903, 907 (La.App. 1st Cir.1992). The trial judge is also given a great deal of discretion in assessing the probative value of evidence. Hebert v. Angelle, 600 So.2d 832, 836 (La. App. 3d Cir.), writ denied, 604 So.2d 997 (La.1992). Thus, a trial court decision admitting or excluding evidence will not be reversed in the absence of a finding of abuse of discretion. Polotzola, 610 So.2d at 907; Hebert, 600 So.2d at 836. Further, determination of whether the trial judge in a civil case abused his discretion by admitting relevant evidence because the relevance is outweighed by prejudice depends, at least in part, on whether the resulting prejudice was unfair in the context of the record of the case as a whole. Polotzola, 610 So.2d at 907.

1) Admission of municipal court record

First, Winn-Dixie claims that the trial court improperly admitted the municipal court record on the criminal shoplifting charge against Dixon, which had been stamped "DISMISSED NOT ON THE MERITS." Winn-Dixie's attack on the admission of the record is based primarily on its contention that dismissal of a criminal charge by some unknown person for some unknown reason is not relevant to determination of whether Winn-Dixie had reasonable cause to detain Dixon for suspicion of shoplifting since different burdens of proof are required in civil and criminal cases.[1]
*313 The burden of proof in false imprisonment cases has been explained as follows:
In order for plaintiff to recover from a merchant for the tort of false imprisonment, [he] must prove that a detention occurred under one or more of the following circumstances: (1) unreasonable force was used, (2) no reasonable cause to believe that the suspect had committed a theft of goods existed, or (3) the detention lasted more than 60 minutes, unless it was reasonable under the circumstances that the suspect be detained longer.
Thomas v. Schwegmann Giant Supermarket, 561 So.2d 992, 995 (La.App. 4th Cir.1990). In this case, the plaintiff sought to prove the existence of the second circumstancethat no "reasonable cause" to believe that the suspect had committed a theft of goods existed.
In contrast, in order for a suspected shoplifter to be convicted under the criminal law of this state, the prosecutor must prove, among other things, "probable cause" to arrest. "Reasonable cause" to justify a detention is "something less than probable cause; it requires that the detaining officer have articulable knowledge of particular facts sufficiently reasonable to suspect the detained person of criminal activity." Id., quoting State v. Hudgins, 400 So.2d 889, 891 (La.1981) (emphasis added). Thus, the defendant correctly argues that two different burdens of proof apply.
However, the inquiry does not end there, because "relevant evidence" under La.C.E. art. 401 includes all evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Thus, the fact that the burdens of proof are different in the two types of cases is not dispositive of whether the municipal court records are relevant to this civil case. In fact, as noted by the trial judge, the municipal court record in this case is relevant under that standard, since it unquestionably does have a tendency to make the existence of reasonable cause more probable than it would be in the absence of the records. Certainly, the defendants would argue that a criminal conviction for shoplifting would tend to make the existence of reasonable cause more probable than it would have been otherwisethe opposite is also true. Thus, we find no abuse of discretion in the trial court's admission of the municipal court record.

2) Exclusion of federal court record

Second, Winn-Dixie contests the trial judge's exclusion of a complaint and pre-trial order, part of the record in a federal court suit filed by Dixon against three New Orleans Police officers. In the complaint, Dixon alleges that, in conjunction with an improper arrest in 1985, he was brutally beaten by the three officers, then forced to perform oral sex on two of the three officers. Winn-Dixie offered the documents in support of its contention that Dixon's alleged injuries were caused, not by an accident, but by his intentional act of "sliding" down the stairs, performed in an attempt to avoid being taken away by the police, because of his alleged fear that he would encounter the same officers. Additionally, Winn-Dixie claims that the documents support its contentions that the plaintiff's RSD was not caused or aggravated by the fall, since the complaint in the federal suit alleged severe and totally disabling RSD injuries to Dixon's right arm and hand as a result of the 1985 encounter with the police.
We note that the trial court decision excluding the federal court record was improper under rules established by the jurisprudence. In Lakeshore Property Owners Assoc., Inc. v. Delatte, 524 So.2d 126 (La.App. 4th Cir.1988), this court found that the trial judge's exclusion of evidence of an extrajudicial admission made in a previous law suit constituted reversible error because the evidence was relevant, although it did not operate as a conclusive presumption as do judicial *314 confessions made in the suit being tried. Id. at 130.
In the instant case, the defendant sought to present evidence of the plaintiff's prior extrajudicial confession, made in a previous lawsuit, during the cross-examination of the plaintiff. The trial judge incorrectly concluded that the prior statements were not relevant. Statements made by the party to an action in prior lawsuits are relevant if those statements have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." La.C.E. art. 401. The statements made by the instant plaintiff in the prior federal court case certainly meet that standard since they did tend to prove that the plaintiff might have had a motive for faking the fall down the stairs in order to avoid going to Central Lockup and running the risk of encountering the same police officers a second time. Thus, the trial court erred in excluding the evidence.
However, under the circumstances presented by this case, the trial court's exclusion of the federal court case is not reversible error. A review of the record indicates that the fact that Dixon claimed to have had the 1985 encounter with the police was discussed numerous times during the trial, both in testimony from medical professionals and in the testimony of the fact witnesses, including the testimony of the plaintiff himself. Further, Winn-Dixie's theory that Dixon faked the accident by sliding down the stairs was presented in great detail during the testimony of Officer Duncan, who was accompanying Dixon at the time the alleged accident occurred. In fact, Duncan's testimony was sufficient, not only to present that explanation for Dixon's alleged fall to the jury, but also to relate that explanation to Winn-Dixie's theory that Dixon would have been willing to do almost anything to avoid going to jail. The fact that Dixon claimed that his RSD was allegedly aggravated by the 1985 incident is also well documented in the record. Since the defendant offered the excerpts from the federal court record in an attempt to advance a theory which was otherwise fully presented to the jury for consideration, the trial judge's improper exclusion of the excerpts record was harmless.[2]

3) Limitation of examination of witnesses

Winn-Dixie also alleges incorrect evidentiary rulings made by the trial judge in connection with defense counsel's examination of three witnesses: the plaintiff, Dixon; Dr. Gerald Davis, an orthopedic surgeon who testified for the plaintiff; and Dr. James M. Laborde, an orthopedic surgeon who testified for the defendant.

a) Cross-examination of plaintiff

Concerning the trial judge's limitation of Winn-Dixie's cross-examination of the plaintiff, Winn-Dixie alleges that it was denied the opportunity to fully question Dixon about the 1985 altercation with police because the trial judge prohibited counsel from mentioning the fact that plaintiff was under arrest at the time the incident occurred. We find no merit in this contention. First, the trial judge's decision on this issue was perfectly correct since evidence of prior arrests are generally not admissible under the Louisiana Code of Evidence. See La.C.E. art. 609. Further, a review of Dixon's cross-examination on this issue reveals that, although the word "arrest" was never used, Dixon did respond in the affirmative when Winn-Dixie's counsel asked him if he had been "taken to police headquarters and handcuffed." The plaintiff also admitted during his cross-examination that he filed a federal court lawsuit about the 1985 incident.

b) Cross-examination of Dr. Davis

Winn-Dixie attacks several of the trial court's rulings which it claims improperly limited complete cross-examination of Dr. Davis,[3] complaining especially about the trial *315 court's decision to limit questions concerning reconciliation of Dr. Davis' conclusion that Dixon suffered a herniated disc as a result of the fall down the Winn-Dixie steps with medical records prepared by his associate, Dr. Watermeier.[4] Further, the trial court disallowed questions concerning Dr. Davis' opinion of Dixon's credibility based on contact with other physicians.
Our review of the record does reveal a serious error on the part of the trial judge in relation to the cross-examination of Dr. Davis. Since Dr. Davis admitted on direct examination that his conclusion that Dixon had suffered a herniation of a disc as a result of the Winn-Dixie accident was based in part on his "assumption" that a note made by his associate, Dr. Watermeier, was incorrect. Since the witness testified to this fact, the defendant was entitled to fully explore the basis of his opinion on cross-examination. The error is compounded by the fact that the inconsistent records were actually prepared by Dr. Davis' associate.
This error would be sufficient to constitute reversible error under ordinary circumstances, but not in this case, primarily because of the fact that the defendant failed to call Dr. Watermeier, despite the fact that defense counsel told the court on two occasions that he did intend to call him. Winn-Dixie's attorney stated in oral argument to this court that the final decision not to call Dr. Watermeier was "strategic." Reversal of a jury trial decision on the basis of an error which could easily have been cured by the complaining party would violate this court's responsibility to reverse only when the trial judge has abused his discretion in conducting the trial. The trial judge's decision on this issue was based, at least partially, on the defendant's assurance that Dr. Watermeier would be called to testify in contradiction of Dr. Davis' conclusion. Defense counsel admitted that the failure to call the contradictory witness was based on consideration of what would be best for the defendant. Further, Winn-Dixie was allowed to fully question Dr. Davis on all issues related to his own personal contact with the plaintiff.

c) Examination of Dr. Laborde

Finally, Winn-Dixie argues that the trial judge improperly limited its questioning of its own witness, Dr. Laborde, who conducted an independent medical examination of Dixon on Winn-Dixie's request. Winn-Dixie sought to prove through its examination of Dr. Laborde that Dixon's claim against Winn-Dixie was specious. In support of this contention, Dr. Laborde was allowed to testify that he felt that Dixon's complaints were magnified by depression and potential financial gain from litigation. He noted a number of his examination findings involving inconsistent subjective complaints, which he felt had no basis in any physical problem. However, the trial judge refused to allow Dr. Laborde to testify concerning a report of a 1986 evaluation of the plaintiff performed by Dr. Philip Griffin, contained in Tulane Medical Center records which had already been admitted into evidence. Winn-Dixie claims that Dr. Griffin's report reveals that Dixon was "fully capable of subtle manipulative behavior in order to meet his own ends."
One possible explanation for the trial judge's decision disallowing the testimony is the fact that the 1986 report concerned an evaluation performed as much as two years prior to the 1988 accident in question. Another possible basis for the decision is the fact that the doctor who prepared the 1986 report was not listed on the witness list. However, if the trial judge's decision was based on either of these considerations, it was not consistent with his other rulings made during the trial. During the testimony *316 of many of the expert medical witnesses, the trial judge allowed them to refer to treatments the plaintiff received for his RSD years prior to the accident. In addition, several of the medical professionals were allowed to testify concerning MRI findings, despite the fact that the doctor who ordered the MRI did not testify. Thus, the trial judge's ruling disallowing Dr. Laborde's testimony was incorrect in light of the record as a whole.
However, in view of the fact that Dr. Laborde was allowed to testify extensively concerning his own conclusions on this issue, the error in disallowing the testimony is harmless. Further, the defendant's theory that the plaintiff faked the accident, as well as the inconsistencies in the medical history given to the various physicians by the plaintiff, were all presented to the jury. Thus, the issues that admission of the statement from the 1986 report was directed toward were fully developed at trial even without admission of that statement.

b. Comments on the evidence

Winn-Dixie also argues that the trial judge violated La.C.C.P. art. 1791, which provides as follows:
The judge in the presence of the jury shall not comment upon the facts of the case, either by commenting upon or recapitulating the evidence, repeating the testimony of any witness, or giving an opinion as to what has been proved, not proved, or refuted.
The above article was passed by the legislature in an attempt to circumscribe verbal and non-verbal indications given by trial judges in the presence of a jury concerning which party they favor. Additionally, the article is designed to prevent trial judges from indicating in front of juries their opinions concerning whether a party has proven a factan action which falls within the exclusive province of the jury. A trial judge's only proper function during a jury trial is to act as an impartial "umpire" in an adversary system. When a trial judge takes actions outside of that function, the attorneys to the action have a right to object. The only proper comments which may be made by a trial judge conducting a jury trial include the asking of supplementary questions for purposes of clarification.
In the instant case, the trial judge stated twice during Winn-Dixie's cross-examination of the plaintiff, when the defendant attempted to impeach the plaintiff with his deposition testimony, that Dixon's trial testimony was "consistent" with his deposition testimony, a conclusion that should properly have been left to the jury. Certainly, those comments violated the provisions of La.C.C.P. art. 1791 prohibition. The trial judge erred by making an improper comment concerning the interpretation of the evidence being presented by the defendant.
However, the fact that the trial judge violated the prohibition does not automatically require reversal of the jury verdict. That result is mandated only when review of the record as a whole reveals that the improper comments made by the trial judge were so prejudicial that the complaining party was deprived of a fair trial. Our review of the record reveals that the trial judge's error in this case did not rise to that level. Thus, the error is harmless and does not require reversal of the trial court judgment.

c. Cumulation of alleged errors

Finally, Winn-Dixie alleges reversible legal error arising from the cumulation of the above circumstances occurring at trial, coupled with the trial judge's attitude toward the defendant, saying the trial judge's actions, taken as a whole, were so prejudicial as to deprive Winn-Dixie of a fair trial. Claiming that the trial judge's actions limited its ability to fully present its defenses and resulted in severe prejudice in the eyes of the jury, Winn-Dixie urges this court to find reversible error based on the cumulative effect of "multiple erroneous evidentiary rulings as well as her disdainful treatment of defense during trial."
Although this court has previously recognized that the cumulative effect of a series of improper trial judge actions can give rise to reversible error, See Clement, 634 So.2d 412, our review of the record of this case as a whole does not reveal such reversible error. *317 We are aware of the defendant's contention that the "printed transcript can not reflect the attitude of impatience, exasperation and disdain with which the trial judge treated defense counsel throughout the trial"; however, the printed transcript is the only avenue of review available to this court. Reversible error must be evident on the face of the trial court record; otherwise, appellate courts could routinely reverse trial court judgments on the strength of the bare contention that the trial judge treated one or the other party unfavorably. Such actions are contrary to the standards governing appellate review. The record in this case reveals no reversible error; thus, we find no merit in any of Winn-Dixie's arguments for reversal on the basis of legal error.

2. Alleged factual errors

Winn-Dixie's second major argument for reversal of the trial court judgment is that the following factual findings made by the jury were manifestly erroneous on the basis of the record as a whole: (1) that Winn-Dixie did not have reasonable cause to detain Dixon, (2) that Dixon sustained an accident or injury due to a hazardous condition on the Winn-Dixie premises, and (3) that Winn-Dixie failed to act in a reasonably prudent manner to keep the premises free of any hazardous condition. Alternatively, Winn-Dixie argues that the 10 percent comparative negligence assigned to Dixon is too low.

a. Reasonable cause to detain

First, Winn-Dixie argues that the jury improperly found it liable for false imprisonment because the jury's conclusion that Winn-Dixie had no reasonable cause to detain Dixon was manifestly erroneous.
Generally, La.C.Cr.P. art. 215 grants immunity from civil liability for damages arising from false imprisonment to merchants and "specially authorized" employees of merchants who "use reasonable force to detain a person for questioning ..., for a length of time, not to exceed sixty minutes,... when [the merchant] has reasonable cause to believe that the person has committed a theft of goods ..., regardless of the actual value of the goods." Thomas, 561 So.2d at 995-96. Therefore, a defendant may not be held liable for damages arising from false imprisonment unless the plaintiff proves that he was detained under one or more of the following circumstances: (1) use of unreasonable force, (2) lack of reasonable cause to believe the plaintiff had committed a theft of goods, or (3) unreasonable detention for more than 60 minutes. Id. at 995.
The jury interrogatory in the instant case focused on the second of the three circumstances listed abovethat is, whether Winn-Dixie had reasonable cause to believe that Dixon had committed a theft.[5] "Reasonable cause" has been defined to mean "something less that probable cause; it requires that the detaining officer have articulable knowledge of particular facts sufficiently reasonable to suspect the detained person of criminal activity." Id. at 995.
Winn-Dixie claims that the undisputed facts in this case are enough to constitute "reasonable cause," even if the jury chose to believe Dixon's version of the contested facts. As noted above, the parties agree that Dixon had put cigarettes in his pocket, then moved into the area between the checkout counters and the front door without having paid for the cigarettes prior to the time he was detained by Castillo.
However, even given the above uncontested facts, the jury could have found, based on Dixon's version of the circumstances surrounding those facts that Castillo had no reasonable cause to believe that Dixon intended to steal the cigarettes. Dixon testified that he placed the two packages of cigarettes in his pocket, with the tops showing, because he did not want to lose the last two packages of his favorite brand of cigarettes which were in the store. He stated that he signalled to the cashier that he had the cigarettes, *318 then walked to the end of the checkout counter to talk to the security guard, who he knew from previous visits to the store, while he waited for some friends, who were shopping in the store. The friends were going to pay for the cigarettes when they paid for the items they were purchasing, Dixon said. Dixon claims that he simply stepped back, away from the security guard, to look down the aisle for his friends, when Castillo asked him to accompany him to the back of the store. He went with the security guard, Dixon stated, because he thought Castillo wanted to show him something. Dixon said that he was not told that he was suspected of shoplifting until he reached the "break room" at the back of the store.
Of course, the defendant's version of the facts surrounding the arrest is different in several significant details from Dixon's version. However, decisions made by finder of fact based purely on credibility calls when two permissible views of the evidence exist can virtually never be manifestly erroneous, and thus are not subject to reversal by appellate courts. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). The factfinder's decision in such cases must be affirmed so long as it is reasonable. Stobart v. State through DOTD, 617 So.2d 880, 882-83 (La.1993). Therefore, the jury's finding that Winn-Dixie did not have reasonable cause to detain Dixon is affirmed.

b. Existence of hazardous condition

Second, Winn-Dixie argues that the jury improperly found it liable for Dixon's personal injuries because the jury's conclusions that Dixon sustained an accident or injury due to a hazardous condition on the Winn-Dixie premises and that Winn-Dixie failed to act in a reasonably prudent manner to keep the premises free of hazardous conditions were manifestly erroneous.
LSA-R.S. 9:2800.6 controls the liability of merchants for personal injuries resulting from accidents occurring on the premises. At the time of Dixon's fall, in 1986, that article provided, in pertinent part, as follows:
A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
B. In a suit for damages by a person who has suffered damages as a result of a hazardous condition while on the merchant's premises, the person must prove that the accident was caused by a hazardous condition. The burden of proof then shifts to the merchant to prove that he acted in a reasonably prudent manner in exercising the duty of care he owed to the person to keep the premises free of any hazardous conditions.
The second and third jury interrogatories in the instant case were directed toward determination of whether Winn-Dixie should be held liable for Dixon's injuries under the above statutes. The second interrogatory questioned whether Dixon carried his burden of proving that a hazardous condition existed which caused his accident; the third interrogatory questioned whether Winn-Dixie carried its burden after the burden shifted of proving that it acted in a reasonably prudent manner in keeping the premises free of hazardous conditions. The jury found specifically that Dixon did carry his burden, and that Winn-Dixie did not carry its shifting burden; thus, Winn-Dixie was held liable for Dixon's damages.
Winn-Dixie's major argument on this issue is that the jury verdict is manifestly erroneous on the basis of the record in this case because in order to reach that verdict the jury had to both "totally accept the plaintiff's version of the incident" and "reject clear and specific testimony from both the former store manager and the police officer" on major points of contention.
However, in light of the principles of appellate review established by the Rosell and Stobart cases, Winn-Dixie's arguments are misplaced. Winn-Dixie's arguments themselves point to the fact that the jury decision on this issue is a pure credibility call, which cannot be reversed by this court if the verdict has a reasonable basis. Stobart, 617 So.2d at 882-83.
*319 Further, a review of the record indicates that the jury's conclusions that a hazardous condition existed on the premises and that Winn-Dixie had failed to act prudently to prevent that condition did have a reasonable basis in the record. Dixon testified that his injuries resulted from a fall down the stairs which was in turn caused by his tripping over a box which had been stacked at the top of the stairs themselves. Dixon stated that the boxes were stacked more than six feet high next to the side of the stairs where the handrail was located, but that the bottom box was turned a different way so that it stuck out. Dixon also said that he experienced some dizziness as he approached the stairs, caused by the fact that he had been forced to stand handcuffed to the rail for such a long period of time. This testimony from the plaintiff is sufficient to provide a reasonable basis for the jury's conclusion. Thus, the trial court judgment on this issue is affirmed.

c. Comparative fault

The jury assigned Dixon ten percent comparative negligence in causing the accident. Winn-Dixie argues that Dixon's comparative negligence should be greater than ten percent because his testimony reveals that he "knew the boxes were there and simply failed to exercise proper caution and walk around the boxes." However, we find no error in the jury's assignment of comparative fault. Dixon admitted that he knew the boxes were present on the stairs and that he had to walk around the boxes when he had gone up the stairs to the "break room." However, he also testified that the bottom box in the stack was turned a different way than the boxes that were higher in the stack. The jury could well have concluded that Dixon tripped over that bottom box even though he did take action to avoid the obvious stack of boxes.
The defendant's arguments that the plaintiff should be assigned a greater percentage of fault in causing the accident were also based in part on their argument that the defendant actually intentionally caused his own accident by kicking the boxes, then pretending to fall. The jury's decision to assign the defendant only 10 percent of the fault in causing the accident is further proof that the jury did not believe the defendant's version of the facts and therefore did not credit the defendant's theory that the plaintiff caused his own injuries.

3. Damages

The trial court awarded Dixon a total of $500,000 in damagesitemized as follows: $125,000 for past, present, and future physical pain and suffering; $125,000 for past, present and future mental anguish and distress; and $250,000 for past, present, and future medical expenses. The trial judge reduced that award to $450,000 after subtracting ten percent of the total for Dixon's comparative negligence. Winn-Dixie argues first that none of the injuries were caused by the March 3, 1988 fall down the stairs. Alternatively, Winn-Dixie argues that the damages are excessive.

a. Causation

Winn-Dixie challenges the damage awards on the basis of its contention that Dixon failed to prove that the fall down the stairs was actually the cause of any of Dixon's physical injuries. Concerning the RSD, Winn-Dixie points to the fact that the condition was originally diagnosed after a 1979 incident in which Dixon's right hand was caught in a printing press, and was previously aggravated by the December 1985 incident with the police. Thus, Winn-Dixie alleges, Dixon failed to prove a causal connection between the RSD and the accident at Winn-Dixie in March of 1988. Concerning the neck and back injuries, Winn-Dixie argues that they could just as well have been caused by an accident which occurred on July 10, 1988, during which Dixon, who was a pedestrian, was hit by an automobile.
Winn-Dixie also asserts that the conclusions reached by Dixon's expert medical witnesses that the physical injuries were caused by the accident are all based on Dixon's subjective complaints, not on any objective findings of injury. However, we note that the record reveals that Winn-Dixie questioned all the medical professionals at length concerning the basis of their medical conclusions. That line of questioning was consistently designed to emphasize the fact that medical professionals are dependent on the history given by the patient in reaching conclusions *320 concerning the cause of injury. Thus, the defendant's theory that Dixon was inventing or exaggerating the extent of the injury he suffered as a result of the Winn-Dixie accident was adequately presented to the jury. The jury had all the evidence before it, and still chose to credit Dixon's version of the facts. We note also that all of Dixon's treating physicians obviously believed his statement of his medical history, indicating the jury had a reasonable basis for concluding that Dixon's subjective complaints were largely consistent with the objective evidence of injury.
Thus, we will consider whether the record reveals a reasonable basis for the jury's conclusion that the various injuries were caused by the accident.

1) RSD

Although Winn-Dixie is correct that the record shows that Dixon's RSD was originally diagnosed by Dr. Michael Brunet after the printing press accident in November of 1979, Dr. Brunet testified that Dixon had "gotten pretty much back to normal" some thirteen months later, in January of 1981, when he was discharged from treatment. Winn-Dixie is also correct that the record shows that the condition was aggravated by the December 1985 incident with the police; Dr. Brunet resumed treatment of Dixon at that time, but again discharged him, after a year and a half of treatment, in August of 1987. Dr. Brunet said that after the second treatment period the plaintiff's condition returned to the point he had reached prior to the police incident, with about 20 percent disability.
Following the fall down the Winn-Dixie stairs, Dixon again sought treatment for the RSD, initially from Dr. Joseph Guenthar, a general practitioner who examined Dixon the day after the accident. Later, Dixon sought treatment from Dr. Brunet, Dr. Aaron Jacob Friedman, and Dr. Davis. All of the medical testimony indicated that Dixon consistently complained of pain in his right arm and hand during the years of treatment between the Winn-Dixie accident and the trial. Further, the plaintiff underwent numerous treatments, including ganglion and bier block treatments, use of a TENS unit, and numerous prescription medications. The medical testimony indicated that the RSD condition had not been stabilized by the time of the trial, even after some six years of the same types of treatment which had previously successfully relieved his pain in a year to year and a half. Thus, the plaintiff was considering undergoing surgery in an attempt to relieve his pain.
We find the above evidence sufficient to support the jury's conclusion that Dixon's pre-existing RSD condition was aggravated as a result of the fall down the Winn-Dixie stairs.

2) Back and neck injuries

Winn-Dixie's major argument that Dixon failed to prove that his neck and back injuries were caused by the Winn-Dixie accident is based on the fact that Dixon admitted that he was struck by an automobile while walking down a New Orleans sidewalk in July of 1988.
However, the medical evidence reveals that Dixon's major complaints when he was taken to the hospital by ambulance on the night of the accident at Winn-Dixie and when he was examined by Dr. Guenthar the day after the accident were related to problems with his back and neck. Further, he had never complained of back or neck problems previous to the accident, according to the medical testimony. Further, Dr. Windsor S. Dennis testified to clinical findings of injury to Dixon's back and neck during the period between the Winn-Dixie accident and the pedestrian-automobile accident four months later. In fact, Dr. Dennis stated that his findings when he first saw Dixon on March 25, 1988 were consistent with later MRI findings that Dixon had a herniated disc at the L5/S1 level and a bulging disc at the L4/5 level. The MRI findings were also reported by Dr. Davis, who attributed the disc injuries to the Winn-Dixie accident. Dr. Friedman's testimony also indicated that Dixon experienced back and neck problems as a result of the accident. Additionally, the medical evidence indicates that Dixon experienced sensory problems indicative of back injury. Dr. Davis assigned Dixon a 30 to 35 *321 percent full body disability rating as a result of his back injuries.
We find the above evidence sufficient to support the jury's conclusion that Dixon suffered injury to his neck and lower back as a result of the fall down the Winn-Dixie stairs.

b. Quantum

Finally, Winn-Dixie claims that all of the damage awards are excessive and urges this court to reduce the awards.

1) General damages

Appellate review of general damage awards has been severely restricted by the Louisiana Supreme Court. Most recently, the supreme court described the appellate function in reviewing damages as follows:
In Reck v. Stevens, 373 So.2d 498 (La. 1979), this Court ... pointed out that the role of an appellate court in reviewing general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. Each case is different, and should be determined by the facts or circumstances particular to the case under consideration.
. . . . .
The standard for appellate review of general damage awards is difficult to express and is necessarily non-specific, and the requirement of an articulated basis for disturbing such awards gives little guidance as to what articulation suffices to justify modification of a generous or stingy award. Nevertheless the theme arising from [previous cases] is that the discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.
Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1260-61 (La.1993). See also Vaughan Contractors, Inc. v. Cahn, 629 So.2d 1225 (La.App. 4th Cir.1993), in which this court recognized that the Youn case is the last in a trilogy of cases in which the Louisiana Supreme Court has indicated that "error correction in factual disputes is virtually non-existent" in Louisiana, resulting in a rule that "reversal of a judgment is warranted only in those rare cases where the record contains little or no evidence to support the trial court's conclusions." Id. at 1228.

a) Physical pain and suffering

Both the plaintiff's testimony and the medical evidence indicate that Dixon suffered severe physical pain and suffering both as a result of the aggravation of the RSD condition in his right hand and arm and as a result of the neck and back injuries. Dixon consulted at least five different physicians for his various injuries; each of those physicians testified that Dixon consistently complained of pain in his right hand and arm, and/or in his lower back or neck. Concerning the RSD, Mr. Friedman characterized the condition as a "horrible disease," which is very painful and can sometimes be "devastating." Dr. Brunet also said that RSD can be very painful. Dixon testified that the ganglion and bier block procedures for treating the RSD were very painful and caused severe complications. Dixon said that he has experienced severe pain in his right arm and hand since the accident. In fact, he claims, the pain has been so severe since the accident, he has asked that the arm be amputated. Dixon also stated that his back pain has prevented him from working.
We find the record evidence that Dixon suffered severe physical pain and suffering, and that he will continue to suffer severe physical pain and suffering in the future, sufficient to support the jury's award of $125,000, under the principles established by the Louisiana Supreme Court in the Youn case, quoted above. Certainly, we are unable to say that the jury abused it's "vast" discretion in setting the award. Accordingly, the award is affirmed.

b) Mental anguish and distress

This element of damages has at least two partsdamages suffered as a result of the *322 improper detention, and damages suffered as a result of the personal injury.
Dixon testified in some detail that he suffered surprise, embarrassment, anger, frustration, resentment, and fear as a result of Winn-Dixie's decision to detain him on suspicion of shoplifting cigarettes. Dixon claims that the whole incident was caused by a decision to accuse him of something he never intended to do, induced by his desire to spend the time he was waiting for his friends talking to the security guard, rather than standing in the check-out line. His testimony indicated that he was very surprised by the fact that the guard thought he was trying to steal the cigarettes. Further, he stated that he was very frustrated by the fact that he was left in the "break room" for such long periods of time after he was taken there. Further, he was handcuffed to a railing in that room for an unspecified period of time while Winn-Dixie employees were coming into the room to take their breaks. When he was told that he was to be arrested, he was afraid that the police officers who had abused him in 1985 would be the ones to pick him up.
The record also contains evidence that Dixon suffered mental anguish and distress as a result of his physical injuries, especially because of the aggravation of the RSD. Dr. Davis testified that Dixon exhibited such severe depression and "suicidal tendencies" on September 30, 1991 that he had recommended emergency psychiatric treatment for the depression. Further, Dr. Davis said that he had once recommended full-time psychiatric care for Dixon.
Thus, we find that the trial court was not manifestly erroneous in concluding that Dixon suffered mental pain and anguish as a result of the false arrest and as a result of his physical injuries. However, the existence of the errors discussed above deprives the jury's award on this issue of the strong presumption of correctness to which it would normally be entitled.
Specifically, in view of our conclusion that the record contains insufficient evidence to support a finding that Dixon needs future psychiatric treatment, we find the $125,000 award for mental pain and suffering is clearly excessive. Our review of the record convinces us that the highest award reasonable jurors could have given Dixon for this item of damages is $50,000. The trial court judgment is therefore amended to reduce the award for mental pain and suffering from $125,000 to $50,000.

2) Special damages

The jury awarded Dixon $250,000 in special damages for past, present, and future medical treatment. The defendant challenges this award, saying it is not supported by the record.

a) Past medical expenses

The record contains uncontroverted evidence of the following past medical expenses:

Dr. Michael F. Adinolfi $ 80.00
United Medical Center of Louisiana 310.00
Clearview Medical Imaging 1,176.00
Dr. Gerald Davis 993.00
Dr. Windsor S. Dennis 305.00
Elmwood Medical Center 9,111.97
Emergency Medical Services 280.00
Dr. Aaron J. Friedman 1,234.00
Greater New Orleans Pain Consortium 3,500.00
Dr. Joseph F. Guenthar 150.00
St. Charles General Hospital 2,452.70
Touro Infirmary 757.80
Tulane Medical Center 239.00
Thera-Kinetics, Inc. 943.78
Jefferson Orthopaedic Appliances, Inc. 400.40
Prescriptions 5,476.97
 __________
TOTAL $27,410.62

The plaintiff is entitled to recovery of all of these past medical expenses.

b. Future medical expenses

The standard for determining whether a factfinder properly awarded damages for future medical expenses was addressed by the Louisiana Supreme Court in Youn, as follows:
When the record establishes that future medical expenses will be necessary and inevitable, the court should not reject an award of future medical expenses on the basis that the record does not provide the exact value of the necessary expenses, if the court can examine the record and determine from evidence of past medical expenses and other evidence a minimum amount that reasonable minds could not disagree will be required. La.C.C.P. art. 2164.
*323 623 So.2d at 1262, quoting Stiles v. K-Mart Corp., 597 So.2d 1012, 1013 (La.1992). Although the claimant is not required to prove the exact value of the necessary expenses, some evidence to support the award must be contained in the record.
The record in the instant case does support the jury's obvious conclusion that future medical expenses will be necessary and inevitable. The plaintiff will continue to incur expenses for doctors' appointments and prescription drugs for an indefinite period of time. Those expenses totalled some $3,000 for doctors' appointments and $5,500 for prescription drugs in the six years between the accident and the trial.
However, this court is unable to determine how the jury reached the conclusion that Dixon's past, present, and future medical treatment would cost $250,000. Further, our review of the record convinces us that, even giving the plaintiff the benefit of every doubt, the record does not support such a high award. Thus, we will consider the evidence to determine the highest possible award the jury could reasonably have given the plaintiff for future medical expenses.
The record contains definite evidence concerning three possible future treatments for plaintiff's RSD. First, the record indicates that the plaintiff intends to undergo a surgical procedure called a sympathectomy; Dr. Brunet testified that the procedure would cost approximately $3,312 for the surgeon's fee, not including hospital charges and anesthesia. We estimate the total amount for the sympathectomy at $10,000. Other possible treatments for the RSD include nerve blocks, at a cost of approximately $1,200 each; the record indicates the plaintiff might require as many as three treatments each year. Although the plaintiff could conceivably require nerve blocks over the next 30 years, in light of the fact that his RSD condition pre-dated the Winn-Dixie accident, no more than ten years of those treatments could reasonably be attributed to this accident. The highest amount the plaintiff could be required to spend on nerve blocks over the next 10 years is $36,000. Further, the medical evidence reveals a recommendation that Dixon participate in a pain clinic at a cost of approximately $24,000 for a 30-day treatment. These latter expenses might be required even if the sympathectomy is performed since the doctors cannot guarantee that the procedure would relieve Dixon's pain. Therefore, the highest reasonable amount the jury could have awarded for future medical expenses for treatment of the RSD is $70,000.
The evidence of possible future medical treatment for the plaintiff's other problems is impossible to calculate with any degree of certainty. Possible treatment for Dixon's back pain includes surgery and/or epidural back injections, which Dr. Davis testified would cost $15,000 to $25,000 for three injections over a six- to nine-month period. However, the record does not indicate how many epidural treatments the plaintiff will need. Further, the evidence of past medical expenses does not include any comparably priced treatments, making the plaintiff's need for such injections in the future speculative. The record also contains no evidence of the estimated cost of surgery to correct the back injury.
Although the record contains evidence that at least one doctor believes that Dixon needs psychiatric treatment as a result of the accident, perhaps on a full-time basis, no expert in psychiatric treatment testified; thus, that opinion is purely speculative. Further, the record contains no evidence of the cost of possible psychiatric treatment.
Giving plaintiff every benefit of the doubt, and considering all of the above evidence, we find that the highest reasonable award the jury could have awarded Dixon for future medical expenses is $100,000. Thus, the award for past, present, and future medical expenses is reduced from $250,000 to $127,410.62.

Conclusion
For the above and foregoing reasons, the trial court judgment awarding Dixon $250,000 for past, present, and future medical expenses is reduced to $127,410.62; the $125,000 award for mental pain and suffering is reduced to $50,000; and the $125,000 for past, present, and future physical pain and suffering is affirmed. The total judgment is therefore reduced from $500,000 to $302,410.62. That amount is reduced by 10 percent to reflect the plaintiff's comparative negligence, making the total award to the plaintiff *324 $272,169.56 ($302,410.62 minus $30,241.06). All costs of this appeal are assessed to the appellant.
AMENDED AND, AS AMENDED, AFFIRMED.
LANDRIEU, J., concurs and assigns reasons.
LANDRIEU, Judge, concurring.
I concur in the result reached by the majority and write only to express my respectful disagreement with the majority's interpretation of Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1260-61 (La.1993), as it applies to our standard of factual review. Citing Vaughan Contractors, Inc. v. Cahn, 629 So.2d 1225 (La.App. 4th Cir.1993), in which this court interpreted Youn, the majority concludes that our standard of "manifestly erroneous" or "clearly wrong" has been further circumscribed and that "... error correction in factual disputes is virtually non-existent ...". I do not believe it was the intention of the Supreme Court to change the standard mandated for factual review. Youn merely elaborated on the authority of appellate courts when reviewing the discretion of trial judges and juries in determining general damage awards.
NOTES
[1] Winn-Dixie also asserts that the municipal court records are inadmissible hearsay, which was one of the bases of its objection to admission of the records at the trial court level. The plaintiff claims that the records are not hearsay because they are self-authenticating under the relevant provisions of the Louisiana Code of Evidence. We note that the fact that the records are self-authenticating under the evidence code does not affect their status as hearsay. However, the municipal records are not a part of the record on appeal, so we are unable to determine whether they are indeed hearsay. However, since WinnDixie failed to brief this contention, we will consider it abandoned for purposes of this appeal. See Uniform Rules, Courts of Appeal, Rule 2-12.4.

Winn-Dixie also claims that this alleged error was compounded by the fact that the trial judge allowed the plaintiff's attorney to argue that the criminal court's dismissal of the charge proved that the detention was improper. However, neither the opening nor closing arguments given by the parties are a part of the record on appeal. Further, no argument by the plaintiff's counsel is found on the pages of the record referenced by the defendant's brief. Thus, we are unable to consider this argument.
Therefore, the only argument we will consider on this issue is whether the trial judge's express holding that the "outcome of the criminal trial would be relevant" to the civil case was correct. Trial transcript, p. 32.
[2] We have examined the excerpts from the federal court record, which were included in the record on appeal by proffer, and find that they would not have provided the jury with any additional information, not otherwise presented at trial, in support of the defendant's theory.
[3] We note that our review of the record in this case reveals that Dr. Davis was non-responsive and evasive on cross-examination to the point that many of his answers were inappropriately glib. The record also reveals that defense counsel became more and more frustrated by the witness' uncooperative demeanor and actions. However, one of the causes of those conditions was defense counsel's own reactions to Dr. Davis' actions. This complaint on the part of the defense does not constitute reversible error.
[4] Winn-Dixie also complains about the trial court's refusal to admonish Dr. Davis when he made a comment during his cross-examination concerning the fact that he did not trust WinnDixie's counsel. The trial judge ruled that the comment was not unfounded because the attorney had insinuated that Dr. Davis had removed documents from his file. Although the witness' comment was certainly improper and the trial judge should have admonished the witness before the jury, we do not find the failure to give such an admonishment to be reversible error.
[5] We note that the detention in the instant case unquestionably lasted more than 60 minutes. In fact, the record reveals that the detention may have lasted as long as two and one-half hours. However, the reasonableness of the length of the detention apparently was not an issue at the trial court level and the parties do not make it an issue in the briefs submitted to this court. Thus, we will not consider that issue. Additionally, we note that the parties do not make the reasonableness of the force used an issue.