STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

15-1096

VICTORIA DAUZAT, ET AL.

VERSUS

DOLGENCORP, LLC, ET AL.

\*\*\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, DOCKET NO. 2014-1020-A
HONORABLE KERRY L. SPRUILL, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

JAMES T. GENOVESE
JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

Court composed of Marc T. Amy, Elizabeth A. Pickett, and James T. Genovese, Judges.

**AFFIRMED.**

Peter J. Wanek
Trevor C. Davies
Lou Anne Milliman
McCranie, Sistrunk, Anzelmo, Hardy, McDaniel & Welch, LLC
909 Poydras Street, Suite 1000
New Orleans, Louisiana 70112
(504) 831-0946
COUNSEL FOR DEFENDANTS/APPELLANTS:
     DG Louisiana, LLC and Amanda Poarch

**Laura Bishop Knoll**
**Jerold Edward Knoll**
**The Knoll Law Firm, LLC**
**Post Office Box 426**
**Marksville, Louisiana 71351**
**(318) 253-6200**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
     **Victoria Dauzat and Phyllis Jeansonne**

**GENOVESE, Judge.**

Defendants/Appellants, DG Louisiana, LLC,[1] doing business as Dollar General (hereafter Dollar General), and Amanda Poarch, suspensively appeal an adverse judgment following a bench trial on Plaintiffs' claims of defamation and false imprisonment. The trial court awarded $20,000 in general damages to each Plaintiff. For the following reasons, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

On April 14, 2014, Plaintiffs, Victoria Dauzat and Phyllis Jeansonne,[2] claimed to have been wrongly accused of shoplifting at a Dollar General store located in Marksville, Louisiana. On October 6, 2014, Plaintiffs filed suit against Dollar General and Ms. Poarch, the employee who accused Plaintiffs of shoplifting. Plaintiffs sought damages for defamation and false arrest. Defendants answered the petition, denying all allegations and asserting immunity for reporting possible criminal activity.

A bench trial was held on June 24, 2015.[3] At the close of Plaintiffs' case-in-chief, Defendants moved for an involuntary dismissal.[4] The trial court took

---

[1]DG Louisiana, LLC, was incorrectly identified as Dolgencorp, LLC. Since the parties refer to this defendant as Dollar General, we will do likewise.

[2]Plaintiffs are sisters.

[3]Ms. Poarch did not appear at trial.

[4]Louisiana Code of Civil Procedure Article 1672(B) governs a motion for involuntary dismissal:

> In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.

We find it noteworthy that after Plaintiffs rested, counsel for Defendants declared, "I just have motions for involuntary dismissal. I can present those, I'm not going to present any evidence[.]" Trial ended after argument relative to the motion for involuntary dismissal.

the matter under advisement with post-trial memoranda submitted by the parties.

On August 5, 2015, the trial court rendered lengthy written Reasons for Judgment.[5]

In that judgment, the trial court denied Defendants' motion for involuntary

---

[5]The trial court paraphrased the evidence adduced at trial as follows, in pertinent part:

As confirmed by security video footage from the store, both [P]laintiffs entered Dollar General at 11:49 o'clock a.m. and were initially looking at merchandise on a discount rack. Of particular importance is [P]laintiffs' trial testimonies that confirm the presence of shoppers in the store who[,] among others[,] were church members with [P]laintiff, Victoria Dauzat.

The security camera footage is without question most probative in reconstructing the events at the Dollar General Store and confirms that Amanda Poarch, [D]efendant-[E]mployee for the Dollar General Store commenced observation of surveillance footage in the store's office at 11:56 o'clock a.m. on the day in question. Her call to police to report an alleged "theft in progress" was made shortly thereafter at 12:04 o'clock p.m. She advised law enforcement in this call that she was presently watching [P]laintiffs steal several items from the store . . . . However, at trial, a review of the security tape does not support a finding of any criminal activity of theft by either Victoria Dauzat or Phyllis Jeansonne. Further, from the surveillance video presented at trial, it is clear that [P]laintiffs were asked to leave the check-out line by law enforcement officers at approximately 12:09 o'clock p.m. The trial evidence further supports a finding that the [P]laintiffs were then and there administered their Miranda rights by law enforcement . . . . The video evidence presented at trial further supports a finding that the questioning of both [P]laintiffs continued in the office at the back of the store and lasted until 12:31 o'clock p.m.[,] at which time the security footage stops without explanation or documentation. Plaintiffs' testimonies contend that the questioning lasted for an extended period of time and much longer than one (1) hour; [D]efendants failed to produce video footage after 12:31 o'clock p.m. contending that it was not available and did not exist. In this regard, it must not be overlooked that video footage had been requested by [P]laintiffs' counsel on April 15, 2014, one day after the incident . . . ; the preservation of the video security tapes were vital [to] the determination of legal issues pending before this [c]ourt.

Unique to this case and of concern to this trier of fact is that the detention of [P]laintiffs continued beyond this first round of questioning described above. Both [P]laintiffs were instructed to return to [t]he Dollar General Store for further inquiry into this matter at 3:00 o'clock p.m. on the same day. Plaintiffs' testimonies reflect that after leaving the Dollar General Store, they went immediately to the home of Phyllis Jeansonne. Their trial testimonies recall the afternoon in question and confirm that neither [Ms.] Dauzat nor [Ms.] Jeansonne felt free and[,] despite their actual innocence, both feared the threat of imminent charges for a crime that they had not committed. Their trial testimonies support a finding that both were justifiably angry and humiliated at having to return to [t]he Dollar General Store. Both [P]laintiffs suffered stress, anxiety, and humiliation, not knowing what would ultimately happen to them relative to the baseless charges of theft. This [c]ourt is further convinced that both [P]laintiffs were humiliated, embarrassed and publicly shamed by the events that occurred. Both were humiliated and concerned that others in their community had received word of the unfounded accusations of theft against them. Their trial testimonies further support a finding that their worst fears had become a reality as the rumors of theft had in fact reached the work place of Phyllis Jeansonne and the church of Victoria Dauzat. Both [P]laintiffs felt that their reputations were damaged.

dismissal and found that Defendants had defamed and falsely imprisoned Plaintiffs and set their general damages at $20,000 each. Judgment was signed August 26, 2015. Defendants have filed a suspensive appeal.

## ASSIGNMENTS OF ERROR

Defendants submit the following errors for our review:

1. The trial court erred in finding Dollar General and [Ms.] Poarch liable for defamation, because merchants are entitled to immunity from suit for reporting a suspected crime to police, and there is no evidence that Ms. Poarch's statements to police were made with malice or reckless indifference as to their truth or falsity. There also is no evidence that the report was communicated to anyone other than police.

2. The trial court erred in finding [Defendants] liable for false imprisonment, because no Dollar General employees ever touched [Ms.] Dauzat or [Ms.] Jeansonne, told them they could not leave, or blocked them from leaving the store.

3. The trial court erred in applying an evidentiary presumption in favor of [P]laintiffs due to missing video footage, where there was no evidence that the evidence was intentionally destroyed in order to deprive them of its use.

4. There was no evidence of damage, or, in the alternative, trial court's award of $20,000 to each [P]laintiff was excessive, where [there is] no evidence that the detention or defamation harmed their reputations or adversely affected their lives or health.

## STANDARD OF REVIEW

The standard of review we are bound to employ was recently reiterated by this court in *Dietz v. Dietz*, 14-1164, pp. 19-20 (La.App. 3 Cir. 5/6/15), 165 So.3d 342, 357-58, *writ denied*, 15-1504 (La. 10/23/15), 179 So.3d 604:

> It is well settled that a trial court's findings of fact are reviewed on appeal pursuant to the manifest error—clearly wrong standard of review. *Snider v. La. Med. Mut. Ins. Co.*, 13-579 (La.12/10/13), 130 So.3d 922.
>
> Under the manifest error standard of review, a court of appeal may not set aside a trial court's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." *Rosell v. ESCO*, 549 So.2d 840, 844

3

(La.1989). There is a two-part test for the reversal of a factfinder's determinations: (1) the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and (2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous). *See Stobart v. State, Department of Transportation and Development*, 617 So.2d 880, 882 (La.1993). *See also Mart v. Hill*, 505 So.2d 1120, 1127 (La.1987). Thus, the issue to be resolved by a reviewing court is not whether the trier-of-fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. *Stobart v. State, Department of Transportation and Development*, 617 So.2d at 882.

Further, where the findings are based on determinations regarding the credibility of witnesses, the manifest error standard demands great deference to the findings of fact. Where the factfinder's determination is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous.

*Id*. at 938.

*See also Purvis v. Grant Parish Sch. Bd.*, 13-1424 (La. 2/14/14), 144 So.3d 922.

Therefore, it is our function to apply the manifest error standard of review to the factual findings of the trial court. In order to reverse the trial court, we must find that no reasonable factual basis exists for its findings on the entire record, and also that based on the record, those findings were manifestly erroneous.

### ASSIGNMENT OF ERROR NUMBER ONE

The first assignment of error relates to the finding of fault for defamation. Defendants argue that Ms. Poarch's statements were protected by a qualified privilege, were not made with malice or reckless indifference, and were not communicated to anyone other than the police.

Plaintiffs contend that the trial court rightly concluded that Ms. Poarch's report to the police was a complete fabrication; thus, her statements were not protected by any privilege. Plaintiffs argue that the indisputable security camera

4

video supports the trial court's finding that Ms. Poarch defamed Plaintiffs when she reported seeing something she could not have seen and, thus, recklessly disregarded the truth. Plaintiffs contend that because other shoppers witnessed them being questioned and because one of the police officers reported their names and the reason they were being investigated over his radio, members of their tight-knit community overheard details via in-home police scanners. As a result of their ordeal, Plaintiffs testified that they suffered great anguish from the gossip which reached members of their workplace and their church.

Defamation claims require proof of "(1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury." *Kennedy v. Sheriff of E. Baton Rouge*, 05-1418, p. 4 (La. 7/10/06), 935 So.2d 669, 674 (citing *Costello v. Hardy*, 03-1146 (La. 1/21/04), 864 So.2d 129). Jurisprudence generally refers to fault "as malice, actual or implied." *Id*. Words which are defamatory are either "defamatory per se and those that are susceptible of a defamatory meaning." *Id*. at 675. Words are considered defamatory per se when they "expressly or implicitly accuse another of criminal conduct, or which by their very nature tend to injure one's personal or professional reputation, without considering extrinsic facts or circumstances[.]" *Id*.

> When a plaintiff proves publication of words that are defamatory per se, falsity and malice (or fault) are presumed, but may be rebutted by the defendant. *Costello*, 03-1146 at 14, 864 So.2d at 140. Injury may also be presumed. *Id*. When the words at issue are not defamatory per se, a plaintiff must prove, in addition to defamatory meaning and publication, falsity, malice (or fault) and injury. *Id*.

*Id*.

> [T]he effect of the assertion of the conditional or qualified privilege is to rebut the plaintiff's allegations of fault and shift the burden to plaintiff to establish abuse of the privilege. *Smith* [*v. Our Lady of the Lake Hosp., Inc.*, 93-2512 (La. 7/5/94), 639 So.2d 730.] In other

5

words, once the privilege is established, it becomes incumbent on the plaintiff to come forward with rebuttal evidence establishing abuse.

*Id*. at 687.

Included in Plaintiffs' evidence was surveillance video of Ms. Poarch observing Plaintiffs before she called the police. Plaintiffs argued against the application of a privilege on the basis that Ms. Poarch alerted the police knowing her statements were false. The trial court agreed declaring: "There is no evidence whatsoever on the surveillance video to implicate [P]laintiffs with the illegal activity of theft of goods." The trial court decided that Ms. Poarch's statements were defamatory per se and that it was her intent to cause Plaintiffs' damage. The burden then shifted to Defendants to rebut this presumption, and Defendants clearly failed in that effort. Ms. Poarch did not even appear at trial, and Defendants presented no evidence whatsoever.

After thoroughly reviewing the evidence in the record, being mindful of the standard of review, we find that the factual conclusions that Plaintiffs proved their claim of defamation are reasonably supported by the evidence. Plaintiffs' testimonies were deemed veracious and accepted by the trial court. Thus, we find no manifest error in the trial court's factual findings relative to the defamation cause of action and find no merit in Defendants' assignment of error addressing this cause of action.

## ASSIGNMENT OF ERROR NUMBER TWO

The second assignment of error relates to the finding of fault for false imprisonment. Defendants argue that the evidence is insufficient to prove false imprisonment because Plaintiffs were not touched or blocked from leaving by Defendants. Further, Defendants argue that the trial court was in error in rejecting

6

its argument that *Kennedy*, 935 So.2d 669, is factually analogous and legally applicable to defeat Plaintiffs' false imprisonment cause of action.

Plaintiffs contend that the trial court rightly rejected Defendants' arguments and, instead, applied *Thomas v. Schwegmann Giant Supermarket, Inc.*, 561 So.2d 992 (La.App. 4 Cir. 1990), to the facts herein. Plaintiffs cite the application of La.Code Crim.P. art. 215(A)(1)[6] in *Thomas*, 561 So.2d 992, as the defining differentiation between the instant case and *Kennedy*, 935 So.2d 669. Plaintiffs contend that the trial court was correct in finding that the evidence did not show that Ms. Poarch had reasonable cause to report a theft in progress, thereby effectuating Plaintiffs' detention. We agree.

False imprisonment claims require proof of: "(1) detention of the person; and (2) the unlawfulness of the detention." *Kennedy*, 935 So.2d at 690 (citing *Tabora v. City of Kenner*, 94-613 (La.App. 5 Cir. 1/18/95), 650 So.2d 319, *writ denied*, 95-402 (La. 3/30/95), 651 So.2d 843). "[T]he tort of false imprisonment[] occurs when one arrests and restrains another against his will and without statutory authority." *Id.* (citing *Kyle v. City of New Orleans*, 353 So.2d 969 (La.1977)).

Relative to Plaintiffs' false imprisonment claims, the trial court's written Reasons for Judgment state, in pertinent part:

> The facts of the *Kennedy* case are clearly distinguishable from the instant case. In the case at bar, the wrongful detention of [P]laintiffs occurred in response to baseless allegations of theft made by Amanda Poarch, an employee of [D]efendant, DG Louisiana, LLC. Law enforcement officers would not have been at [t]he Dollar General

---

[6]Louisiana Code of Criminal Procedure Article 215(A)(1) provides:

> A peace officer, merchant, or a specifically authorized employee or agent of a merchant, may use reasonable force to detain a person for questioning on the merchant's premises, for a length of time, not to exceed sixty minutes, unless it is reasonable under the circumstances that the person be detained longer, when he has reasonable cause to believe that the person has committed a theft of goods held for sale by the merchant, regardless of the actual value of the goods. The merchant or his employee or agent may also detain such a person for arrest by a peace officer. The detention shall not constitute an arrest.

Store concerned[] but for the call made by Amanda Poarch. The detention that occurred in these proceedings happened at [t]he Dollar General Store. The unlawful detention was precipitated by the reckless actions of Amanda Poarch when she reported the alleged shoplifting/theft to authorities without any evidence to support such charges. On the other hand, the *Kennedy* case involves a justified call to police; the case at bar involves a baseless call to police of allegations unsupported by evidence. Not only did Amanda Poarch make a baseless report to law enforcement officers, but the record of the case reflects an absolute untruth from her mouth when she yelled out the following in the presence of customers to the [P]laintiffs as they were departing the store after exoneration: "I am not the one that called the cops."

We find the trial court's discussion of *Kennedy*, 935 So.2d 669, to be accurate and its reliance upon *Thomas*, 561 So.2d 992, and its application of La.Code Crim.P. art. 215(A)(1) to the matter herein to be appropriate.

After thoroughly reviewing the record, we find that the evidence supports the trial court's ruling. Plaintiffs were the only witnesses to testify at the trial of this matter and to present evidence. Defendants only rebutted with argument. As evinced by the detailed written Reasons for Judgment, the trial court assessed Plaintiffs' truthfulness and candor. The trial court was in the position of directly hearing all of the evidence, and it made factual findings based upon the evidence and credibility determinations. Strict deference is given to a trial court's credibility determinations. *Melder v. Brookshire's Grocery Co.*, 14-669 (La.App. 3 Cir. 12/10/14), 154 So.3d 781. The trial court's reliance on Plaintiffs' testimonies is certainly reasonable and justified and in accordance with the rule relative to two permissible views of the evidence. The trial court's choice between two permissible views of the evidence can never be manifestly erroneous. *Sharbeno v. Allstate Ins. Co.*, 14-670 (La.App. 3 Cir. 12/10/14), 153 So.3d 576. Therefore, we find the trial court's conclusions reasonable. At the very least, the trial court's conclusions were based on a permissible view of the evidence. We find that a reasonable factual basis exists in the evidence before the trial court, and, although

8

one may view these facts differently, the trial could was not clearly wrong. Therefore, we must not substitute our view of the evidence for that of the factfinder. *See Purvis*, 144 So.3d 922.

## ASSIGNMENT OF ERROR NUMBER THREE

In the third assignment of error, Defendants assert that the trial court erred by imposing an adverse presumption for spoliating evidence. On appeal, Defendants dispute Plaintiffs' entitlement to an adverse presumption under the theory of spoliation of evidence claiming:

> The store's CCTV system retains footage for approximately one and a half months and then footage is automatically recorded over. Before . . . receiv[ing] [P]laintiffs' discovery requests in November 2014, the footage was automatically recorded over. Defendants would have likely benefitted from the surveillance footage had it been available at the time the lawsuit commenced. Thus, [P]laintiffs were not entitled to an adverse presumption under the theory of spoliation of evidence.

Defendants argue that Plaintiffs were not entitled to a presumption in their favor because there was no evidence that the subject video footage was intentionally destroyed for the purpose of depriving Plaintiffs of its use at trial.

"Louisiana jurisprudence holds that when a litigant destroys, conceals, or fails to produce evidence within his or her control, it gives rise to an adverse presumption that had the evidence been produced, it would have been detrimental to the litigant's case." *Allstate Ins. Co. v. Ford Motor Co.*, 00-710, p. 4 (La.App. 3 Cir. 11/2/00), 772 So.2d 339, 342. "The appellate standard of review for a trial court's evidentiary ruling on [the] issue [of spoliation] is whether the trial court abused its broad discretion." *Carter v. Hi Nabor Super Market*, 13-529, p. 9 (La.App. 1 Cir. 12/30/14), 168 So.3d 698, 704-05, *writ denied*, 15-190 (La. 4/17/15), 168 So.3d 399.

9

At trial, Plaintiffs presented evidence suggestive of the fact that Defendants allowed for spoliation of video evidence. Defendants failed to preserve video camera footage after 3:00 p.m.; thus, Plaintiffs contend that this constituted spoliation of the evidence.

The trial court made its pronouncement relative to spoliation of evidence within the context of its ruling on Plaintiffs' false imprisonment claims:

> [D]efendant, [Dollar General] knowledge of the pending claims, failed to preserve the surveillance video reflecting the events that unfolded after 12:31 o'clock p.m. on the day in question. It is this unexplained spoliation of evidence (i.e. the destruction of surveillance video depicting events occurring after 12:31 o'clock p.m.), coupled with the fact that Amanda Poarch failed to appear at trial to explain and/or justify the 911 call made by her that causes great concern to the trial court.

The record reflects that Defendants acknowledge receipt of Plaintiffs' letter dated April 15, 2014. This letter requested a copy of the video camera's surveillance footage from April 14, 2014. Defendants admitted that Plaintiffs were given a compact disc which contained footage from April 14, 2014; however, it was for a two and a half hour period not inclusive of 3:00 p.m. and what occurred afterwards. Defendants contend that the closed circuit television system retains footage for one and a half months, and, when Plaintiffs' discovery requests were received in November 2015, the footage had been automatically recorded over.

Plaintiffs assert that Defendants produced footage of only part of the incident in response to Plaintiffs' request. According to Plaintiffs, because Defendants knew of their impending lawsuit and failed to produce video evidencing the entire time Plaintiffs were being interrogated, the application of the spoliation presumption against Defendants was warranted. We agree.

We find no abuse in the trial court's broad discretion in applying the adverse evidentiary presumption under the theory of spoliation of evidence against

Defendants herein. The trial court's ruling is based in part on the fact that Dollar General failed to preserve the surveillance video. The trial court was also critical of Ms. Poarch's absence at trial. Given these circumstances, we do not find that the trial court abused its broad discretion in applying the presumption herein.

## ASSIGNMENT OF ERROR NUMBER FOUR

In the fourth and final assignment of error, Defendants argue that the evidence fails to establish that Plaintiffs sustained any injuries. In the alternative, Defendants contend that the trial court's general damage awards were excessive. We find no merit in either of these arguments.

"Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." La.Civ.Code art. 2315(A). When assessing general damages, "much discretion must be left to the judge[.]" La.Civ.Code art. 2324.1. The role of an appellate court when reviewing general damage awards is to review the trial court's exercise of discretion, it is not the role of an appellate court to decide what it considers to be an appropriate award. *Youn v. Mar. Overseas Corp.*, 623 So.2d 1257 (La.1993), *cert. denied*, 510 U.S. 1114, 114 S.Ct. 1059 (1994); *Melder*, 154 So.3d 781.

> Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.

*Youn*, 623 So.2d at 1261. *See also Jeansonne v. City of Marksville*, 15-298 (La.App. 3 Cir. 11/25/15), 180 So.3d 608. Since the trial court is in the best position to evaluate witness credibility and see the evidence firsthand, it is afforded much discretion in independently assessing the facts and rendering an award. *Miller v. LAMMICO*, 07-1352 (La. 1/16/08), 973 So.2d 693; *McCarthy v. Entergy*

11

*Gulf States, Inc.*, 11-600 (La.App. 3 Cir. 12/7/11), 82 So.3d 336, *writ denied*, 12-72 (La. 3/9/12), 84 So.3d 553.

The trial court articulated that the damages awarded to Ms. Dauzat and Ms. Jeansonne were for "injuries to reputation, personal humiliation, embarrassment, mental anguish and suffering." The evidence reflects that Plaintiffs suffered overwhelming stress both during and after this incident. According to Plaintiffs, the experience continued long after the day of the incident due to gossip within their community. Plaintiffs described feelings of shame, anxiety, and anger. The trial court accepted Plaintiffs' testimonies. We give deference to the trial court's credibility assessment, and we find no merit in Defendants argument that Plaintiffs sustained no injury.

Finally, relative to the amount of the trial court's awards, we cannot say that under these facts, the trial court abused its vast discretion in awarding $20,000 to each Plaintiff. It is evident from its written Reasons for Judgment that the trial court made a thorough examination of relevant jurisprudence to establish reasonable awards for the injuries Plaintiffs suffered due to Defendants defamation and false imprisonment. We find no abuse of discretion in the amount of damages awarded by the trial court. Accordingly, the judgment of the trial court is affirmed in its entirety.

## DECREE

For the foregoing reasons, we affirm the trial court judgment in favor of Plaintiffs, Victoria Dauzat and Phyllis Jeansonne, and against Defendants, DG Louisiana, LLC, and Amanda Poarch. We assess all costs of this appeal to DG Louisiana, LLC, and Amanda Poarch.

**AFFIRMED.**

12