# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT


**19-236**


**JAMES HERRON**

**VERSUS**

**STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, ET AL**


\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
PINEVILLE CITY COURT
PARISH OF RAPIDES, NO. 2017-CV-00376
HONORABLE GARY K. HAYES, CITY COURT JUDGE


\*\*\*\*\*\*\*\*\*\*


**JONATHAN W. PERRY
JUDGE**


\*\*\*\*\*\*\*\*\*\*


Court composed of Shannon J. Gremillion, Candyce G. Perret, and Jonathan W. Perry, Judges.


**AFFIRMED AS AMENDED.**

**Bradley J. Gadel**
**Bradley J. Gadel, APLC**
**728 Jackson Street**
**Alexandria, Louisiana  71301**
**(318) 448-4406**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
  **GoAuto Insurance Company**
  **Robert Newman**

**Byron O'Neal**
**O'Neal Law Firm**
**1847 Sterkx Road**
**Alexandria, Louisiana  71301**
**(318) 487-8787**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
  **James Herron**

**Michael T. Johnson**
**Duncan McKeithen**
**Johnson, Siebeneicher & Ingram, APLC**
**Post Office Box 7598**
**Alexandria, Louisiana  71301**
**(318) 484-3911**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
  **Lalitha Alla**
  **State Farm Mutual Automobile Insurance Company**

**PERRY, Judge.**

Defendants/Appellants, GoAuto Insurance Company ("GoAuto") and Robert Newman ("Mr. Newman") (hereinafter collectively referred to as "Appellants"), appeal the judgment of the trial court in favor of Plaintiff/Appellee, James Herron ("Mr. Herron"), alleging error with its judgment, fault allocation, and quantum assessment. For the following reasons, we affirm as amended.

## FACTUAL AND PROCEDURAL HISTORY

This personal injury litigation stems from an automobile accident which occurred on May 3, 2017, when a collision occurred between a 2002 Ford F150 driven by Mr. Newman and a 2015 Tesla S/4 driven by Defendant/Appellee, Lalitha Alla ("Ms. Alla").[1] At the time of the accident, Mr. Herron was a guest passenger in Mr. Newman's truck. Following the accident, Mr. Herron sought medical attention for neck pain, back pain, and headaches. On July 27, 2017, Mr. Herron filed a petition for damages, naming as defendants both drivers and their insurers. Mr. Herron's petition alleged:

> [T]he accident occurred when LALITHA ALLA failed to stay a safe distance from the front of the Newman vehicle and improperly backed her vehicle into the front of the Newman vehicle, occupied by JAMES HERRON, AND/OR ROBERT NEWMAN failed to stay a safe distance from the rear of the ALLA vehicle and rear-ended the ALLA vehicle[.]

A bench trial was held on July 27, 2018, after which memoranda were submitted, and the matter was taken under advisement. On August 31, 2018, the trial court issued the following written reasons, quoted in pertinent part:

> The Court finds Robert Newman to be 100% at fault for the automobile accident that occurred on May 3, 2017, in Pineville, Louisiana. The testimony of a very credible witness, Amy Roden, who clearly and unequivocally testified that she was a guest passenger of the defendant, Dr. Lalitha Alla, and that they were stopped for a red light

---

[1] Defendant/Appellee, State Farm Mutual Insurance Company (State Farm), insured the 2015 Tesla S/4 driven by Ms. Alla.

in the turn lane of LA Hwy 116 when their vehicle was lightly rear ended by the vehicle operated by Robert Newman. Ms. Roden clearly stated and corroborated the testimony of Ms. Alla that the vehicle they were in, a 2015 Tesla, did not roll back and strike the vehicle operated by Robert Newman, in which the plaintiff, James Herron, was a guest passenger. The testimony of the plaintiff, James Herron, is not believable due to many inconsistencies throughout his testimony. Ms. Alla testified when she got out her vehicle to inspect her car for damage, she discovered no visible damage to the rear of her car and stated under oath that since there was no damage she did not want to get anyone in trouble so she merely left after it was determined that no one was injured nor observed any property damage. For the above mentioned limited reasons[,] the Court finds Robert Newman and GoAuto Insurance to be liable.

**Damages:**

As to Damages, the Court relies upon the expert testimony of Dr. Bradley Kirzner who was qualified in Chiropractic and Biomechanics. Dr. Kirzner testified that low impact collisions can and do cause injuries. Since there was no other expert testimony to dispute this theory, the Court must accept his testimony. Based upon Dr. Kirzner's testimony, James Herron sustained a neck/back and headaches injury as a result of the accident. According to Dr. Kirzner's medical records and testimony, Mr. Herron actively treated with him from the initial visit on June 5, 2017 until December 18, 2017. It is the opinion of this Court that apparently Mr. Herron responded quite well to the treatment and [had] improved pain and [was] discomfort free after his last active treatment of December 18, 2017[,] since [there was] no follow up treatment until the week of the trial. Dr. Kirzner also testified that Mr. Herron stated that he was looking down at a phone at the time of impact, which leads the Court to believe that he was not looking forward to even witness the accident.

Mr. Herron was awarded $17,500.00 in general damages and $4,713.83 in special damages. The trial court also assessed GoAuto and Mr. Newman with costs, including fees for depositions, expert witnesses, medical records, and court costs.

On September 13, 2018, the trial court signed a judgment in favor of Mr. Herron, decreeing that GoAuto and Mr. Newman were liable "jointly and in solido" for all general and special damages, court costs,[2] and legal interest. The

---

[2] The judgment also dismissed all claims against Ms. Alla and State Farm at GoAuto's and Mr. Newman's costs.

judgment also contained a Rule 9.5 certificate noting GoAuto and Mr. Newman objected to the proposed judgment.[3]

GoAuto and Newman filed a motion for new trial, contesting the trial court's allocation of fault, assessment of damages, and failure to recognize the bodily injury liability limits of $15,000.00 provided by GoAuto to Mr. Newman. The motion for new trial was considered and denied on November 30, 2018,[4] with a judgment to this effect signed on December 7, 2018. Appellants then perfected a suspensive appeal.

## ASSIGNMENTS OF ERROR

Appellants present the following assignments of error for our consideration:

1. The trial court committed legal error in rendering Judgment against GoAuto Insurance Company in an amount in excess of its policy limits of $15,000.00 and ignoring the GoAuto Insurance Company insurance policy placed into evidence, and in otherwise disregarding the contractual nature of liability insurance in the State of Louisiana.

2. The trial court committed manifest error and was clearly wrong in exonerating Dr. Lalitha Alla from fault, and in otherwise finding that Robert Newman was 100% at fault in causing the accident and damages claimed by James Herron, in complete contradiction to the weight of credible evidence presented by the only eye-witnesses to the accident, without any reasons or explanation.

3. The trial court committed error in making an excessive award of general damages of $17,500.00 for complaints that were non-existent and/or not related to the accident and not supported by the credible medical evidence available, particularly when there was no property damage sustained by either vehicle.

---

[3] The judgment was contested for failing to recognize the bodily injury liability limits of $15,000.00, which GoAuto and Mr. Newman presented in a subsequent motion for new trial.

[4] The parties reference a hearing; however, a transcript of said hearing does not appear in the record.

## DISCUSSION

*Form of Judgment*

"A legal error occurs when a trial court applies incorrect principles of law and such errors are prejudicial. *See Lasha v. Olin Corp.*, 625 So.2d 1002, 1006 (La.1993). Legal errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights." *Evans v. Lungrin*, 97-541, p. 7 (La. 2/6/98), 708 So.2d 731, 735. When a trial court commits legal error, an appellate court is required to review the record *de novo* and render judgment, applying the correct principles of law. *Id.*

Mr. Newman's automobile insurance policy with GoAuto provided bodily injury liability limits of $15,000.00 per person and $30,000.00 per accident. Appellants allege it was legal error for the trial court's judgment to decree GoAuto and Mr. Newman are liable "jointly and in solido," resulting in the trial court casting GoAuto in judgment for an amount in excess of Mr. Newman's contractual automobile insurance policy limits.

Mr. Herron alleges that coverage defenses were waived by GoAuto's failure to introduce at trial either a reservation of rights letter or non-waiver agreement between it and its insured, Mr. Newman. *See Steptore v. Masco Constr. Co. Inc.*, 93-2064 (La. 8/18/94), 643 So.2d 1213. However, we find Mr. Herron's contention misplaced.

"Louisiana jurisprudence recognizes that a liability insurer may be liable for a judgment against its insured in excess of the policy limits, when the insurer failed to deal in good faith with a claim against its insured." *Larios v. Martinez*, 17-514, p. 9 (La.App. 5 Cir. 2/21/18), 239 So.3d 1041, 1047. "In the absence of bad faith, a liability insurer generally is free to settle or to litigate at its own discretion, without

4

liability to its insured for a judgment in excess of the policy limits." *Smith v. Audubon Ins. Co.*, 95-2057, p. 7 (La. 9/5/96), 679 So.2d 372, 376.

GoAuto acknowledged coverage for the accident and defended its insured. It has neither been alleged nor proven that GoAuto failed to deal in good faith with the subject claim against its insured, Mr. Newman. Instead, GoAuto contends it was error for the trial court not to recognize it is within its rights to oppose liability for an amount that exceeds the policy limits afforded under Mr. Newman's automobile insurance policy. We agree.

It is well established that "[a]n insurance policy is a contract that constitutes the law between the parties." *Marcus v. Hanover Ins. Co. Inc.*, 98-2040, p. 4 (La. 6/4/99), 740 So.2d 603, 606. "[I]n the absence of a conflict with statutes or with public policy, insurers have the same rights as do individuals to limit their liability and to enforce whatever conditions they impose upon their obligations." *Cadwallader v. Allstate Ins. Co.*, 02-1637, p. 9 (La. 6/27/03), 848 So.2d 577, 583. Thus, the insurance policy establishes the limits of liability.

We find it was legal error for the judgment to declare GoAuto and Mr. Newman were liable "jointly and in solido" for all general and special damages, court costs, and legal interest. Accordingly, we amend in part the trial court's September 13, 2018 judgment to reflect GoAuto and Mr. Newman are liable, in solido, in the sum of $15,000.00, with legal interest thereon from the date of judicial demand until paid. The award in favor of Mr. Herron against GoAuto is limited to $15,000.00, plus legal interest.

*Liability*

"An assessment of fault is a factual determination." *Johnson v. Safeway Ins. Co.*, 06-224, p. 2 (La.App. 3 Cir. 5/31/06), 931 So.2d 1221, 1223. Appellate courts are bound to review a trial court's findings of fact using the manifest error—clearly

5

wrong standard. *Dauzat v. Dolgencorp, LLC*, 15-1096 (La.App. 3 Cir. 4/6/16), 215 So.3d 833, *writ denied*, 16-832 (La. 6/17/16), 192 So.3d 766. "[W]here there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable." *Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989). Additionally, if the trial court's findings are "based on its decision to credit the testimony of one of two or more witnesses, [its findings] can virtually never be manifestly erroneous or clearly wrong." *Id*. at 845. Moreover, when the trial court's findings are based on credibility determinations, we must give great deference to the findings because "only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said." *Id*. at 844.

In the instant case, the trial court was faced with conflicting testimony concerning how the accident took place. Appellants contend the trial court was manifestly erroneous in its assessment of fault to Mr. Newman. They argue it was error for the trial court to accept the version of events detailed by Ms. Alla and Ms. Roden, over the account given by Mr. Newman and his passenger, Mr. Herron. We disagree.

On the date of the accident, Ms. Alla was operating a 2015 Tesla S/4, an electric car with an automatic transmission. She was stopped for a red light in the left-turn lane of Louisiana Highway 116 when her car's rear motion-detection sensors made a beeping noise and, almost immediately, she felt an impact. Ms. Alla and Ms. Roden initially questioned whether or not they had just been rear-ended. She parked, got out her car, and met Mr. Newman and Mr. Herron standing between the two vehicles. Ms. Alla testified that Mr. Newman, in a mumbled voice, asked if she had driven in reverse. Ms. Alla replied her car had not rolled backwards. After

6

seeing no damage to either vehicle, she returned to her car, and Ms. Roden expressed her desire to make sure there was no damage. Ms. Alla exited her car a second time, accompanied by Ms. Roden. Ms. Alla recalled either Mr. Newman or Mr. Herron asking if they were okay, to which Ms. Roden answered affirmatively. Ms. Roden then asked Mr. Newman and Mr. Herron the same question and also received affirmation from both men. After seeing no damages to either vehicle, Ms. Alla and Ms. Roden returned to Ms. Alla's car and Ms. Alla drove away. Ms. Alla explained she left the scene without calling or waiting for the police because she was the one hit from behind and also because there was no property damage, no injury, and no indication from either Mr. Newman or Mr. Herron that they wanted to call the police or exchange insurance information. She was adamant her car never rolled backwards and insisted Mr. Newman's truck bumped her car in the rear.

Mr. Newman testified that on the date of the accident, he was operating a 2002 Ford F150 truck. While stopped for a red light behind Ms. Alla's car, he and Mr. Herron noticed Ms. Alla's car begin to roll backwards. He claimed Mr. Herron told him Ms. Alla's car was rolling backwards. Mr. Newman put his truck into reverse and used its horn in an effort to avoid being hit but he was unable to drive backwards very far because a vehicle was behind his. Ms. Alla's car stopped and drove forward. Mr. Newman then also drove forward, stopping approximately one-half car length behind Ms. Alla's car. Ms. Alla's car rolled backwards a second time and struck Mr. Newman's truck. According to Mr. Newman, immediately after the collision, everyone—Mr. Newman, Mr. Herron, Ms. Alla, and Ms. Roden—got out of their respective vehicles. He denied ever speaking to Ms. Alla at the accident scene and recalled that only Mr. Herron asked if everyone was okay and Ms. Roden answered affirmatively. Mr. Newman testified Ms. Alla and Ms. Roden wasted no time returning to Ms. Alla's car and driving away. Mr. Newman called the police,

7

reporting a hit-and-run accident. Mr. Newman remembered using his truck's horn the first time Ms. Alla's car rolled backwards and estimated Ms. Alla and Ms. Roden spent between forty seconds and two minutes after the collision examining the vehicles before driving away. He explained it was because Ms. Alla left the accident scene so quickly that he did not have an opportunity either to express he intended to call the police or to request her insurance information. When asked whether the collision damaged his truck or injured Mr. Herron, Mr. Newman stated his truck was not damaged, but despite being neighbors and business partners, he and Mr. Herron had never discussed whether Mr. Herron was injured in the accident.

Ms. Roden supported Ms. Alla's version of events, testifying that immediately before impact, she heard Ms. Alla's car make a beeping noise then felt "a really light tap[.]" She asked Ms. Alla if they had been rear-ended and suggested Ms. Alla get out and check her car's rear for damage. When Ms. Alla returned and indicated she saw no damage, Ms. Roden expressed her desire to double check. When she and Ms. Alla got out of the car, either Mr. Newman or Mr. Herron asked if everyone was alright. They all agreed no one was injured and neither vehicle was damaged. Other than that, Ms. Roden did not converse with either Mr. Newman or Mr. Herron. She, like Ms. Alla, was certain Mr. Newman's truck rear-ended Ms. Alla's car, and stated that at no time did Ms. Alla's car ever roll backwards. Ms. Roden also denied ever hearing a vehicle's horn.

Mr. Herron testified he was looking down at his phone when he realized Mr. Newman had shifted his truck into reverse. He looked backwards, saw a vehicle, and told Mr. Newman to stop because a vehicle was behind theirs. It was at this point Mr. Herron noticed Mr. Newman was trying to avoid being hit by Ms. Alla's approaching car. According to Mr. Herron, Mr. Newman used his truck's horn, Ms. Alla drove forward, and then Mr. Newman also drove forward in order to move

8

away from the vehicle behind theirs. Then, Mr. Herron explained, "we [got] back talking and I'm back going through Facebook or whatever and she do it again. But this time when I notice, she was right there, she hit us. She had done already hit us." He described the impact as "a medium hit."

Under cross-examination by counsel for Ms. Alla and State Farm, Mr. Herron maintained he was looking up and down at his phone, but claimed he saw Ms. Alla's car roll backwards. When confronted with medical records from Dr. Kirzner, Mr. Herron conceded he may have told Dr. Kirzner he was looking down at his phone when the impact occurred; however, he did not recall telling Dr. Kirzner he was in a vehicle that was hit from behind. Mr. Herron initially expressed he was unaware his petition alleged alternative scenarios—that either Mr. Newman's truck rear-ended Ms. Alla's car or Ms. Alla's car backed into Mr. Newman's truck. He later acknowledged his lawsuit included Mr. Newman "[b]ecause of the . . . two different stories." However, Mr. Herron maintained Ms. Alla's car backed into Mr. Newman's truck. Mr. Herron's testimony supported much of Mr. Newman's version of what occurred immediately following impact, stating he asked Ms. Alla and Ms. Roden if they were okay; however, neither woman answered, and no other discussion occurred. Instead, Ms. Alla and Ms. Roden spent roughly six seconds inspecting the vehicles, then returned to Ms. Alla's car and drove away.

Under cross-examination by counsel for Mr. Newman and GoAuto, when Mr. Herron was asked why he sued Mr. Newman, he explained, "Well, the first I felt was he got, hit the, the guy behind us." Mr. Herron agreed, however, Mr. Newman's truck had not hit the vehicle behind theirs.

Sergeant Edric A. Smith of the Pineville City Police Department testified via deposition that he was dispatched to the scene of the subject accident. When he arrived, Mr. Newman said he was stopped at the red light behind a car that appeared

9

to be having trouble shifting into gear, and the car rolled backwards until it impacted Mr. Newman's truck. Mr. Newman, describing the car's driver as an Arab female and the car's passenger as a white female, said the car's driver and passenger stepped out of the car and walked to the vehicle's rear. Mr. Newman also gave Sergeant Smith the car's license plate number.[5] Sergeant Smith recalled Mr. Herron describing to him the same account given by Mr. Newman. Mr. Herron did not indicate he was injured, and Sergeant Smith did not observe any damage to Mr. Newman's truck. According to Sergeant Smith, after contacting Ms. Alla and collecting statements from her and Ms. Roden, he investigated the specifications of Ms. Alla's vehicle, a Tesla S/4, and spoke to a Tesla service manager in Shreveport. In that conversation, Sergeant Smith was advised a Tesla, such as was being driven by Ms. Alla, could not unintentionally roll backwards. Sergeant Smith did not issue a citation to either driver.

A review of the trial court's written reasons for judgment indicates the trial court determined Ms. Alla and especially Ms. Roden to be more credible. Recognizing the trial court is in the best position to assess the demeanor and to judge the credibility of witnesses when there is conflicting testimony, we do not find the trial court was manifestly erroneous or clearly wrong in finding Mr. Newman at fault. In addition, even with our access only to a cold record, it is clear Mr. Herron's testimony did not meaningfully bolster Mr. Newman's account as significantly as the testimony of Ms. Roden—a witness with no interest in this litigation—supported Ms. Alla's version of events. A notable implausibility pointed out by the trial court was Mr. Herron's claim he was looking at his phone while also witnessing how the accident occurred. Accordingly, the trial court's assessment of fault is affirmed.

---

[5] Mr. Newman and Mr. Herron both denied being responsible for noting the car's license plate number.

*General Damages*

Appellants argue the trial court abused its discretion in awarding $17,500.00 in general damages to Mr. Herron. They contend the award is not only excessive, it was based on the trial court's erroneous reliance upon Mr. Herron's testimony concerning his alleged injuries, particularly in light of the trial court's rejection of his testimony concerning how the accident occurred.

In *Bouquet v. Wal-Mart Stores, Inc.*, 08-309, pp. 4-5 (La. 4/4/08), 979 So.2d 456, 458-59, the supreme court addressed the methodology for the appellate review of general damages made under the provisions of La.Civ.Code art. 2324.1,[6] as follows:

> General damages are those which are inherently speculative in nature and cannot be fixed with mathematical certainty. *Duncan v. Kansas City So. Ry. Co.*, 00-0066, p. 13 (La. 10/30/00), 773 So.2d 670, 682; *Boswell v. Roy O. Martin Lumber Co., Inc.*, 363 So.2d 506, 507 (La.1978); *Anderson v. Welding Testing Lab., Inc.*, 304 So.2d 351, 352 (La.1974) . . . .
>
> The standard of review applicable to a general damages award is the abuse of discretion standard. *Anderson*, 304 So.2d at 353; *Coco v. Winston Indus., Inc.*, 341 So.2d 332, 335 (La.1976). The trier of fact is afforded much discretion in assessing the facts and rendering an award because it is in the best position to evaluate witness credibility and see the evidence firsthand. *Duncan*, 00-0066, p. 13, 773 So.2d at 682 ("Vast discretion is accorded the trier of fact in fixing general damage awards."); *Anderson v. New Orleans Pub. Serv., Inc.*, 583 So.2d 829, 834 (La.1991). An appellate court may disturb a damages award only after an articulated analysis of the facts reveals an abuse of discretion. *Theriot v. Allstate Ins. Co.*, 625 So.2d 1337, 1340 (La.1993); *Youn v. Maritime Overseas Corp.*, 623 So.2d 1257, 1261 (La.1993), *cert. denied*, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). The role of an appellate court in reviewing a general damages award is not to decide what it considers to be an appropriate award but rather to review the exercise of discretion by the trier of fact. *Duncan*, 00-0066, p. 13, 773 So.2d at 682-83; *Youn*, 623 So.2d at 1260. To determine whether the fact finder has abused its discretion, the reviewing court looks first to the facts and circumstances of the particular case. *Theriot*, 625 So.2d at 1340; *Youn*, 623 So.2d at 1261.

---

[6] Louisiana Civil Code Article 2324.1 provides, "In the assessment of damages in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury."

Only if a review of the facts reveals an abuse of discretion, is it appropriate for the appellate court to resort to a review of prior similar awards. *Duncan*, 00-0066, p. 14, 773 So.2d at 683; *Cone v. Nat'l Emergency Serv. Inc.*, 99-0934, p. 8 (La. 10/29/99), 747 So.2d 1085, 1089; *Youn*, 623 So.2d at 1261. In a review of the facts, the test is whether the present award is greatly disproportionate to the mass of past awards for truly similar injuries. *Theriot*, 625 So.2d at 1340; *Reck v. Stevens*, 373 So.2d 498, 501 (La. 1979). Prior awards, however, are only a guide. *Theriot*, 625 So.2d at 1340.

Lastly, "[t]he issue of whether the amount of damages awarded conflicts with similar awards only arises once it has been ascertained that the [judge or] jury abused its discretion in determining the amount of damages awarded[.]" *Miller v. LAMMICO*, 07-1352, p. 29 (La. 1/16/08), 973 So.2d 693, 711.

At trial, Dr. Kirzner, a board-certified chiropractor, was accepted as an expert in the fields of chiropractic medicine and biomechanics. He first examined Mr. Herron on June 5, 2017, for complaints of neck pain, lower back pain, and headaches. Dr. Kirzner testified his diagnosis was "sprain and strains of the lumbar spine. Increased muscle spasms of the back. Headaches. Segmental dysfunction of the lumbar region and thoracic region, as well as the cervical region." From June through December 2017, he provided chiropractic treatment to Mr. Herron. Dr. Kirzner testified he examined Mr. Herron just days before trial, determining Mr. Herron required additional chiropractic care. According to Dr. Kirzner, scientific data confirms that low impact collisions can and do cause injury. Further, it was his opinion that although the subject accident was a low impact collision, Mr. Herron's injuries were related to the automobile accident of May 3, 2017.

Mr. Herron testified that shortly after the accident, he went to the emergency room of Rapides Regional Medical Center for back pain. He was prescribed muscle relaxers.[7] Mr. Herron testified he bathed in Epsom salt and green alcohol to manage

---

[7] Mr. Herron's medical records from Rapides Regional Medical Center were introduced into evidence and corroborate his testimony.

his back pain and headaches until he sought treatment with Dr. Kirzner, an Alexandria chiropractor, on June 5, 2017. He saw Dr. Kirzner twenty-eight times between June 2017 and December 2017, receiving chiropractic treatment for neck pain, back pain, and headaches. Mr. Herron admitted there were gaps in his treatment during that time frame, claiming there were occasions when his headaches prevented him from attending appointments and there were times that he skipped appointments because he felt well. On January 23, 2018, Mr. Herron sought treatment with Primary Care Specialists in Alexandra for headaches and back pain. He was prescribed antibiotics for a sinus infection and Fioricet, a medication for headaches. A CT scan with and without contrast was also ordered. The CT scan, performed February 7, 2018, showed no abnormalities.[8] Mr. Herron testified that at his most recent appointment with Dr. Kirzner, just days prior, he made a plan to receive chiropractic treatment two to four times a month for the two following months. Mr. Herron claimed the accident rendered him unable to ride four-wheelers or play basketball with his sons since the accident until May 2018, when he suffered a torn Achilles tendon.

After careful review, we find no manifest error in the trial court's acceptance of Mr. Herron's testimony concerning his alleged injuries, especially in light of the supportive testimony of Dr. Kirzner. Further, we find no manifest error in the trial court's conclusion that Mr. Herron proved he was injured as a result of this accident. The record shows that Mr. Herron's injuries were corroborated by medical records and particularly the testimony of Dr. Kirzner. Mr. Herron experienced immediate pain after the accident on May 3, 2017, warranting same-day hospital treatment. He subsequently sought treatment for neck pain, back pain, and headaches with

---

[8] Mr. Herron's medical records from Primary Care Specialists, LLC, were introduced into evidence and corroborate his testimony.

13

Dr. Kirzner, receiving regular chiropractic treatment for seven months. Mr. Herron sought medical attention with his regular care physicians at Primary Care Specialists in January 2018, after which he managed by self-treating at home. He testified pain necessitated his return to Dr. Kirzner shortly before trial, and Dr. Kirzner corroborated Mr. Herron's need for future care. Under these facts, we find a general damage award of $17,500.00 was within the discretion of the trial court. Accordingly, we affirm the trial court's general damage award.

## DECREE

For the foregoing reasons, we affirm the factual findings of the trial court regarding allocation of fault and assessment of damages. However, we amend the trial court's judgment of September 13, 2018, to recognize the bodily injury liability limits of $15,000.00 provided by GoAuto to Mr. Newman. Thus, Mr. Herron is entitled to judgment against GoAuto and Mr. Newman, in solido, for the sum of $15,000.00, and against Mr. Newman, solely, for the excess. Costs of this appeal are assessed equally to Defendants/Appellants, GoAuto Insurance Company and Robert Newman, and Plaintiff/Appellee, James Herron.

**AFFIRMED AS AMENDED.**

14